Stewart v. City of Lincoln.

WILLARD E. STEWART ET AL., APPELLANTS, V. CITY OF
LINCOLN, APPELLEE.

FILED JUNE 22, 1922.    No. 21873.

1. **Eminent Domain:** VALUATION OF LAND. Where land is taken from the owner by the power of eminent domain, the owner is entitled to receive the full market value of such land as of the date it was appropriated.

2. ———: ———: EVIDENCE. In such case, where the land has been enhanced in value by the construction of a public improvement, it is improper for the condemnor to show that the land bore no part of the expense of such improvement by way of assessments for benefits.

3. ———: ———: ———. Under the circumstances as shown by the record in this case, proof that the land bore no part of the expense of the public improvement *held* to be prejudicial.

APPEAL from the district court for Lancaster county: ELLIOTT J. CLEMENTS, JUDGE. *Reversed.*

*Wilmer B. Comstock* and *Frank M. Tyrrell,* for appellants.

*C. Petrus Peterson* and *Charles R. Wilke, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, ALDRICH and FLANSBURG, JJ.

DAY, J.

This is a condemnation proceeding in which the city of Lincoln, in the exercise of its power of eminent domain, seeks to appropriate for municipal purposes a tract of 159 acres of land owned by Willard E. Stewart. For the purpose of convenience, the owner will be referred to as the plaintiff, and the city as defendant. The commissioners appointed by the county judge to determine the value of the land taken made an award to the owner in the sum of $15,000. From this award the plaintiff appealed to the district court, where he recovered a verdict and judgment for $29,551.66. From this judgment the plaintiff has appealed.

The only question litigated was the value of the land appropriated.

It is urged that the court erred in permitting the defendant, over the objection of the plaintiff, to show by cross-examination of the plaintiff that the land in controversy had never borne any part of the burden by way of special benefits for the construction of a drainage canal which extended along the north side of a part of the land for a distance of nine city blocks, and also that the land had never been assessed for the pavement of a public highway leading from the city into the country, and which ran in close proximity to the land, cutting off a small corner thereof. The plaintiff, as a witness in his own behalf, described with considerable particularity the general character of his land and the uses to which it was adapted. Among other things, he mentioned its proximity to the business center of the city, its desirability for warehouse and other commercial purposes, its use for gardening, lumber yards, and other business projects; that the drainage canal protected it from overflow, and that a paved highway afforded a continuous road from a short distance from his land into the city.

Upon cross-examination of the plaintiff, over objection, the defendant showed that no special assessments were ever laid against any part of the land for the construction of either the drainage canal or the pavement of the highway; that in the construction of the drainage canal a part of plaintiff's land had been taken, for which he demanded and received damages.

We are inclined to the view that the court erred in permitting this line of cross-examination. It must be borne in mind that the plaintiff's land was being taken from him without his consent for a public purpose. He was entitled to receive the full market value thereof at the time it was appropriated, regardless of whether the land had borne any part of the cost of the public improvements, which admittedly had enhanced its value. As we view it, these facts developed upon the cross-examination were preju-

dicial to the rights of the plaintiff.  From them the jury might well regard that the plaintiff was attempting to reap where he had not sown.

Considerable space is given in the briefs to a discussion of the value of the land in controversy.  The plaintiff contends that the great weight of the testimony supports the view that the land was worth a much larger sum than that allowed by the jury.  There is a great diversity of opinion as to the value of the land between the plaintiff's and the defendant's witnesses.  The average estimate of the plaintiff's witnesses was above $66,500, and of the defendant's witnesses just below $12,900.  In view of the fact that we have concluded that there should be a new trial, the question of the value of the land is not considered.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for further proceedings.

REVERSED.