LEO B. STUHR, APPELLEE, V. CITY OF GRAND ISLAND, APPELLANT.

FILED JANUARY 20, 1933. No. 28131.

*Arthur G. Abbott, Arthur C. Mayer* and *H. G. Wellensiek,* for appellant.

*Cleary, Suhr & Davis, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ.

GOSS, C. J.

This case, involving a judgment for damages arising out of condemnation of plaintiff's land for a sewer, was heard by one of the divisions of the court, and an opinion was adopted reversing the judgment of the district court. *Stuhr v. City of Grand Island,* 123 Neb. 369. A motion for rehearing was duly filed. On consideration thereof an oral argument on the motion was allowed and had by the full court. The case was fully reargued—as if on the merits.

An injunction suit between the same parties, arising over the sewer, was previously before this court. *Stuhr v. City of Grand Island,* 120 Neb. 491. In the injunction case we affirmed a final order of the district court enjoining the city from conducting its sanitary sewage through an open canal on the land condemned "until such a time that said city shall, by the construction of an adequate disposal plant, or by other appropriate means, render the output of the sewage of such city, which flows past the lands of the plaintiff, and which may be carried thereon by overflow, clear and odorless, with the contents of organic matter sufficiently oxidized so that it is non-putrescible and incapable of causing a nuisance."

In commenting on the effect of the injunction and on testimony that, notwithstanding the injunction, the sewer will emit noxious and offensive odors and thus damage property not taken, the opinion in the present case says: "Notwithstanding the question of committing a nuisance seems to have been foreclosed in that case, the trial court in this case permitted witnesses to testify that this sewer would exhale noxious and offensive odors to the extent of becoming a nuisance and endangering the health of persons living in that vicinity. In view of the present state of the record, any evidence offered at the trial of this case under a claim that the present improvement

would diminish the value of the land unappropriated by making the same uninhabitable or unfit for habitation was incompetent and improper and the jury should not have been permitted to hear testimony in support of such an element of damage." *Stuhr v. City of Grand Island,* 123 Neb. 369.

We think the foregoing comment unduly restricted plaintiff's rights under the facts and the law. The sanitary sewage from the closed sewer was the main subject-matter of the injunction suit, but the decision of the district court that "the building of the open storm sewer, such as contemplated by the defendants at the inception of the suit, would not, in itself and disconnected with the problem of an influx and overflow of sewage from Wood river at the proposed outlet, constitute a nuisance or endanger the health of the plaintiffs to the extent that it should be enjoined." *Stuhr v. City of Grand Island,* 120 Neb. 491. So while, under the facts in that record, the decision refused to consider the open ditch through plaintiff's land a nuisance, and therefore declined to enjoin it, yet it was not intended by the decision in that case to impair plaintiff's right to prove any proper elements of damages when he should seek compensation for his property condemned and damages to the rest of his land not taken but affected by the creation and use of the sewer. The opinion under reexamination holds that in his action for damages plaintiff (1) may not use evidence as to the effect of the content of the open sewer, (2) may not show a present market value of his land for subdivision by reason of its proximity to Grand Island, and (3) may not show that the gravel on his land makes a market value beyond that for farming purposes. We think this was in some respects too restrictive of plaintiff's rights, and to some extent misinterpreted that which was involved. The reversal having been arrived at largely on the ground above named, and other assignments not having been discussed, we are constrained to reconsider the entire appeal on the merits. So many of the geographical and general facts

appear in the statements of the former opinions we will not restate them here.

Appellant's first assignment is that the court erred in failing to instruct the jury as to the material issues in the case. The first three instructions state what the parties pleaded, respectively, in the amended petition, the answer and the reply. The first instruction abstracts and condenses the amended petition, which the record does not show to have been attacked. The instruction concisely describes the plaintiff's land and improvements and the sewer to be dug across it—all as set forth at greater length in the petition. It recites that plaintiff alleges his land adjoins the city of Grand Island, abuts on the present and proposed Lincoln Highway, is in part highly productive for agricultural purposes, in part desirable for acreage tracts for home purposes, and in part valuable because of gravel deposit thereon. It states that plaintiff seeks to recover $2,400 damages for the four acres actually appropriated and $23,500 for the depreciation arising to the remaining land. It sets out the allegations as to damages on the phase last above in the following particulars: (1) The open ditch (dimensions described) with the dirt excavated therefrom will be unsightly, and the water therein (described as to qualities) will pollute the water supply of the tract and will be dangerous to life and health of those living near and of live stock kept on the tract; (2) the removal and relocation of improvements, the fencing and its maintenance necessitated; (3) the gravel deposits on the remaining tract and the present railroad trackage will be separated; (4) the main body of plaintiff's land will be segregated from its one tract of ten acres and another tract of one-half acre—requiring the building of a bridge. In succeeding instructions the court told the jury that the answer raised issues on these matters and then described the burden of proof upon plaintiff to prove the material allegations of the petition by a preponderence of the evidence. So the court intended, and the jury must be considered to have under-

stood, that the foregoing items constituted the material allegations, elements or particulars in which plaintiff was damaged, if at all. These matters were so plain and simple, and had been gone over so much in the trial, that the failure of the court to state and number each item separately and to tell the jury in specific words that these were the "material allegations" did not have any tendency to mislead the jury. It did not constitute prejudicial error. *Murray v. Burd,* 65 Neb. 427; *Van Horn v. Cooper & Cole Bros.,* 88 Neb. 687, 693. If all these matters and elements were material, then the court adequately stated them and properly submitted them.

It is next assigned that the court erred in holding that the damages should be assessed as of October 21, 1925, the date of the passage of the ordinance appropriating the land. Appellant seems to concede that this is the general rule, but argues that an exception should be made here and the taking of the land should be considered to have been accomplished as of the date of the trial. Where land is taken from an owner by the power of eminent domain, he is entitled to the full market value as of the date it was appropriated. *Stewart v. City of Lincoln,* 108 Neb. 825. Valuation for railroad right of way is fixed as of the time of taking; application for appointment of commissioners to assess damages constitutes a taking. *Northeastern N. R. Co. v. Frazier,* 25 Neb. 53; *Fremont, E. & M. V. R. Co. v. Bates,* 40 Neb. 381. Appellant urges an exception to this rule because it claims the city was prevented and delayed in taking possession of the condemned land by plaintiff's injunction suit. *Stuhr v. City of Grand Island,* 120 Neb. 491. The main purpose of that suit was to prevent the city from sending its domestic sewage through its proposed open sewer past plaintiff's lands without first treating it so that it would not constitute a nuisance. The district court protected plaintiff by its decree in this respect as we expressly interpreted that decree. That it was necessary for plaintiff to go into court to secure that relief

is apparent in the history of that case. One evidence is the cross-appeal of the city, one point of which was based upon that portion of the decree quoted in the second paragraph of this opinion. We not only denied the appeal but the cross-appeal as well. The right of the city to use the condemned land for a proper sewer use as contemplated was complete on October 21, 1925. The owner had the statutory right to appeal from the award. Comp. St. 1929, sec. 16-634. The delay in bringing the appeal to trial was occasioned fully as much by the conduct of the city as by that of plaintiff. We find no compelling reason to adopt an exception to the general rule. The court instructed the jury that the evidence showed that the city had not yet taken possession of the strip of land appropriated, that therefore no interest in the award was recoverable until after judgment, and that the matter of interest should be disregarded. This fairly and fully protected the city.

It follows that the district court did not err in striking from the answer the allegations therein pleading the portion of the plaintiff's petition in the injunction suit wherein plaintiff set forth that the ordinance and all condemnation proceedings were void, that the city acquired no title to the land, had no legal right to take it, and the like.

The jury found that the four acres appropriated were worth $1,000 and that the remaining land was damaged $7,500. Judgment was rendered for the total sum.

Error is conventionally assigned separately as to five instructions, but they are quoted together in the brief and are discussed in the same manner in order to save space. We shall do likewise. The first of them gave the jury the measure of damages to be derived under the evidence: First, the fair market value of the four acres appropriated at the time it was so appropriated; and second, as to the balance of the tract, the difference between its fair market values just prior and just subsequent to the "appropriation, had the proposed ditch been built thereon."

The next instruction cautioned the jury not to speculate upon what the four acres might be worth in the future for purposes for which it was not available or marketable, but said they were not confined to its value as agricultural land alone unless the jury found it was more valuable for that purpose than any other. They were told this amount should not be increased or diminished by any effect its taking has had upon the rest of the tract. There was testimony from which the jury might find a greater value, but they found the four acres to be worth $250 an acre. The appellant complains that the instructions segregated the four acres from the rest of the land and that the jury would naturally place a higher valuation on this than on the farm left adjacent. The court appears to have hedged the instructions with the restrictions necessary and it is noted that the defendant did not request others. The value fixed by the jury upon the four acres does not appear excessive. Certainly it is not so much so as to indicate prejudice.

As to the damages to the remaining land, in fixing the value of it after the appropriation the jury were told they could take into consideration the elements pleaded and proved. The instruction limited them, in arriving at the cost of removing and relocating buildings and improvements, to such as were actually on the land appropriated, though permitting them to consider the convenience of the location of all buildings and improvements after relocation, in estimating the depreciation in value of the remaining land or as an element in its then value. Another instruction told the jury they might take into consideration the effect of the location of the ditch upon all the uses to which the land was adapted, upon the convenience or inconvenience of carrying on the farm, and whether its location and construction would render it more or less attractive to buyers. Another told the jury to make no allowance for any destruction of gravel deposits, but if they found this land had gravel deposits, found that the value of these deposits depended upon

trackage, found that the ditch would render it more difficult to secure trackage and that the land would be depreciated thereby, then, in arriving at the amount of such depreciation, they might take into consideration the expense and inconvenience which the appropriation of the strip and the building of the ditch may have or cause the owner in procuring such trackage.

Without reciting the evidence, there was ample testimony referring to all of the elements mentioned in the instructions. The nearness of the land to the city, its adaptability to farming, its gravel content on the portion cut off from the rest, with proximity to desirable trackage intercepted by the ditch, the cost of moving and of bridges and so forth were covered by the evidence. The jury were carefully admonished that all the elements referred to in the instructions as to depreciation of the land remaining after the ditch was built were for their consideration in arriving at the amount of depreciation, if any. In other words, they were an aid to fix the market value of the tract after the appropriation of the four acres, so that the jury could determine the difference, if any, in the value before and after.

The appellant criticizes the reception of testimony that part of the land could be sold as tracts fronting on the pavement. This was one of the adaptable uses of the land pleaded and permitted to be proved. It now appears to us to be entirely proper. 10 R. C. L. 130, sec. 113. *Stewart v. City of Lincoln*, 108 Neb. 825, recites that the plaintiff testified to various things making his land desirable. We now think it was a question for the jury whether any of this land was adaptable for subdivision and whether that element should be considered in fixing its market value, rather than a question of law for the court. The same thing applies to the gravel on a portion of the tract and to the trackage thereto intercepted by the sewer. All these were held in the former opinion to have caused reversible error. In the light of the rehearing and of further consideration by the

whole court, we are of the opinion these matters do not constitute reversible error.

Lastly, it is claimed that the verdict and judgment are not sustained by the evidence and are excessive. Without reciting the facts, we find there was evidence from which the jury might have reached a much larger verdict. It was a matter for the jury. In the circumstances it will not be disturbed.

The former judgment in this court is vacated. The judgment of the district court is

AFFIRMED.